UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DEMARCO H. AS-SAFFAT,

Petitioner,

v. Case No. 21-cv-1241-pp

MICHAEL MEISNER,

Respondent.

---

**ORDER DENYING PETITIONER'S MOTION FOR RECONSIDERATION (DKT. NO. 36)**

---

On June 30, 2026, the court denied the petitioner's 28 U.S.C. §2254 petition for writ of *habeas corpus* and entered judgment. Dkt. Nos. 32, 33. On August 3, 2026, the court received a letter from the petitioner, in which he said that he "believes" that he received the court's order on July 6, 2026. Dkt. No. 35 at 1. According to the petitioner, he placed a motion to reconsider in the prison mailbox on July 28, 2026, but it was returned to him on July 30, 2026 with a sticky note that said he needed a certified mail receipt if he wanted to send the motion certified. Id. at 1. Dkt. No. 35. On August 10, 2026, the court received from the petitioner a motion to reconsider. Dkt. No. 36. The court will deny the motion.

## I. Petitioner's Motion for Reconsideration

### A. Legal Standard

The petitioner filed his motion for reconsideration under Federal Rule of Civil Procedure 59(e). A party must file a Rule 59(e) motion no later than twenty-eight days after entry of judgment. The court cannot extend the time to

file a Rule 59(e) motion. Fed. R. Civ. P. 6(b)(2). Even if the motion is timely, it will "be successful only where the movant clearly establishes: '(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.'" Cincinnati Life Ins. Co. v. Beyrer, 722 F.3d 939, 954 (7th Cir. 2013) (quoting Blue v. Hartford Life & Accident Ins. Co., 698 F.3d 587, 598 (7th Cir. 2012)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). For that reason, "[s]uch motions are disfavored and should be 'rare.'" Acantha LLC v. DePuy Orthopaedics Inc., Case No. 15-C-1257, 2018 WL 2290715, at *1 (E.D. Wis. May 19, 2018) (quoting Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990)).

The court first must determine whether the petitioner filed his motion within twenty-eight days. The court entered judgment on June 30, 2026 and it received the petitioner's motion forty-one days later, on August 10, 2026. The petitioner says that he put it in the prison mailbox twenty-eight days after judgment was entered (and twenty-two days after he received a copy of the order).

The petitioner's assertions implicate the prison mailbox rule. That rule "provides that a prisoner's notice of appeal is deemed filed at the moment the prisoner places it in the prison mail system, rather than when it reaches the court clerk." Hurlow v. United States, 726 F.3d 958, 962 (7th Cir. 2013). The rule is justified because "the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control

or supervise and who may have every incentive to delay." Houston v. Lack, 487 U.S. 266, 271 (1988); see also Ray v. Clements, 700 F.3d 993, 1002–03 (7th Cir. 2012). Although the prison mailbox rule first was applied to notices of appeal, see Houston, 487 U.S. at 276, the rule applies to all district court filings save for "exceptional situation[s]." Edwards v. United States, 266 F.3d 756, 756, 758 (7th Cir.2001) (*per curiam*). (Rule 59(e) motions). "A prisoner may invoke the rule by filing a notarized statement or sworn declaration providing the date on which the prisoner placed the filing in the prison's internal mail system and stating that first-class postage was prepaid." Johnson v. Piontek, 799 F. App'x 418, 419 (7th Cir. 2020).

The petitioner has not provided a notarized statement or sworn declaration providing the date on which he placed his filing in the prison's internal mail system and that the first-class postage was prepaid. The "sticky note" that he included in the letter does not bear a time or date; it simply says, "Need certified mail receipt added if you want to send out certified." Dkt. No. 35 at 1. That said, the petitioner explains that he is "keep[ing] the original disbursement dated June 28th, 2026, in case it's needed down the line." Id. at 2.

Even if the petitioner did not file within twenty-eight days, the court can review the motion under Fed. R. Civ. P. 60(b). "Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." Harrington v. City of Chicago, 433 F.3d 542, 546 (7th Cir. 2006) (quoting Karraker v. Rent-A-Center, Inc., 411 F.3d 831, 837 (7th Cir. 2005)). Rule 60(b) allows a court to grant relief from a judgment for any of six reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). In the event of an appeal, the court will review the motion for reconsideration under both standards.

B. Petitioner's Arguments

The petitioner's motion for reconsideration focuses on the court's treatment of two of his four claims: (1) that he was denied the right to self-representation at trial; and (2) that counsel was ineffective in failing to introduce expert testimony and a DNA report in support of the petitioner's defense. Dkt. No. 36. The petitioner continues to argue that the trial court should immediately have halted the final pretrial proceedings and conducted a Faretta hearing when the petitioner first asked to represent himself. Dkt. No. 36 at 1-2. He insists that the trial court's decision to continue the colloquy to a later date was a "post hoc rationalization." Id. at 3. He argues that the trial judge's assertion that the court had "insufficient time" is "mathematically inaccurate and unreasonable." Id. at 3. In support of his argument, the petitioner compares the transcript of the final pretrial conference—in which he made his request at page 85, the hearing ended twenty-four pages later at page 109—with the transcript of the sentencing in which he made his request at

page 10 and the court completed the Faretta hearing seventeen pages later. Id. at 1.

The petitioner also takes issue with this court's finding that he failed to identify language in Faretta or other controlling authority that requires a court to immediately halt the proceedings and conduct the colloquy the minute the self-representation request is made. Id. at 4. The petitioner cites Raulerson v. Wainwright, 469 U.S. 966, 970 (1984), in which the United States Supreme Court denied a petition for a writ of *certiorari* and Justice Marshall, in his dissent, wrote that the "delay in holding a [Faretta] hearing after the right is unequivocally asserted undermines that right by forcing the accused to proceed with counsel in whom he has no confidence and whom he may distrust." The petitioner also cites United States v. Mancillas, 880 F.3d 297 (7th Cir. 2018), in support of his argument that the trial court should immediately have conducted the colloquy. Id. at 5. According to the petitioner, the right to represent oneself is either "respected or denied." Id. at 6. The petitioner says that the fact that the trial court waited to conduct the colloquy means that his right was denied. Id. In support of this argument, the petitioner cites Imani v. Pollard, 826 F.3d 939, 947, n.1 (7th Cir. 2016) as holding that "a denial was a denial regardless of whether the court says that it will entertain a request to reconsider the decision in the future." Id. at 5.

Additionally, the petitioner takes issue with this court's finding that he did not renew his request at the start of trial or otherwise participate in the court's attempted colloquy. Id. at 6. He argues that this court appears to ignore the fact that he asked to represent himself on the first day of trial. Id. at 7. He adds that the state court's citation to State v. Klessig, 211 Wis. 2d 194 (Wis. 1997), was inappropriate because that case "is a competency standard" and

the trial court determined that the petitioner was competent at the November 7, 2014 sentencing hearing. Id. at 7.

With respect to his ineffective assistance of counsel argument, the petitioner argues that it "would have been the duty of defense counsel" to request an affidavit from Troy Chadwick, the state's expert witness Id. at 9. He believes that this court implied he was untruthful about when he learned of Chadwick's report; he insists that his statements at the final pretrial conference were about Patricia Dobrowski's report rather than Chadwick's report. Id. at 11-12. He maintains that he learned of Chadwick because Dobrowski's report states that "[t]he above screening and preparation of these items was performed by Forensic Program Technician Troy P. Chadwick." Id. at 12. He argues that Chadwick performed some DNA testing and "produced inconclusive conclusions regarding the toilet paper (Item L) and the underwear (Item C). Id. The petitioner says that he did not discover Chadwick's conclusions or the DNA report until after receipt of his post-conviction discovery. Id. (citing Dkt. No. 11-4 at 103-109).

The petitioner says that Dobrowski's report was filed on December 5, 2013 and Chadwick's DNA report was completed and available on November 6, 2013. Id. at 13. He accuses the prosecutor of lying to the court about his knowledge of Chadwick's report. Id. The petitioner believes that the "[d]efense attorney conspired with prosecutor's untruthfulness by trying to convince the circuit court that [the petitioner] didn't understand what he was talking about regarding Chadwick's initial DNA report and his inconclusive conclusion." Id.

The petitioner argues that his counsel could have added Chadwick as a witness on the second day of trial but failed to do so, which meant that "Chadwick's DNA report and negative conclusions were never presented to the

jury." Id. at 14. The petitioner maintains his innocence, claiming that he simply provided the victim with food, shelter, transportation and pocket money. Id. He claims that the victim did not want the police involved. Id. The petitioner explains that the State led him to believe that DNA was found in the victim's anus; according to the petitioner that meant that the victim had done something herself or the State had manufactured evidence. Id. at 14-15. The petitioner also believes that the victim's story doesn't add up because she said that she paid for a Greyhound bus and that it took her about two hours to get from Arkansas to Milwaukee. Id. The petitioner says, "[f]actually that's about a day ride on the bus. Speculating as to the point of $1066.30 when she was in Milwaukee." Id. at 15.

Finally, the petitioner takes issue with the Wisconsin Court of Appeals' finding that the report revealed micro sperm on the vaginal smear taken from the vaginal swabs and the anal smear from the anal swabs, which meant there was genetic material to test. Id. at 16. The petitioner says that the record reflects that Dobrowski didn't analyze everything. Id. (citing Dkt. No. 11-10 at 77).

Under the heading "conclusion," the petitioner argues that he needed only one juror to doubt Dobrowski's findings. Id. at 17. He writes:

> Unfortunately, the petitioner was stuck on the anal swab, because it mentally effected him. He still trimbels at the idea of such an act sexually. Petitioner says, one juror, is all he needed to show doubt. In that they would have seen the negative vaginal swabs too.

Id. at 17 (as in original). The petitioner argues that this error was "fatally prejudicial" and that the state hid Chadwick's negative conclusions from the court, jury and the petitioner. Id. The petitioner continues to assert his innocence. Id. at 18.

The petitioner attaches to his motion thirty pages of exhibits, including excerpts of the transcript from a September 15, 2014 hearing in which the petitioner requests to represent himself post-conviction, dkt. no. 36-1 at 3-8, a copy of the state court docket, id. at 9, excerpts from the transcript of the petitioner's sentencing hearing, id. at 10-13, excerpts from the state's response to the defendant's motion to dismiss for a speedy trial violation, id. at 14-16, a letter from the Assistant District Attorney regarding the state's second witness list, id. at 18, a letter from the Assistant District Attorney providing discovery to Attorney Harris, id. at 20, handwritten notes, id. at 21-22, excerpts from a transcript, id. at 23-27, doctor notes, id. at 28, and a trial court order for supplemental briefing on the petitioner's *pro se* motion for postconviction relief, id. at 29-30.

C. Analysis

*Habeas* review is limited. The court examines the record that was before the state court at the time the decision was made. Cullen v. Pinholster, 563 U.S. 170, 181 (2011). The federal court may grant *habeas* relief only if a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1)–(2). Courts typically are limited to a deferential review of the reasonableness, "rather than the absolute correctness, of a state court decision." Mosley v. Atchison, 689 F.3d 838, 844 (7th Cir. 2012). This is because 28 U.S.C. §2254(d) guards against "extreme malfunctions in the state criminal justice systems;" it is not a substitute for "ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102 (2011).

Whether the court applies Rule 59(e) or 60(b), the petitioner has not met his burden. As the court explained in its decision, the petitioner argued on appeal that the trial court had violated his Sixth Amendment right to representation by failing to rule on his request to proceed without an attorney *at the final pretrial conference*. Dkt. No. 32 at 14 (citing Dkt. No. 11-4 at 45-48). His petition for review to the Wisconsin Supreme Court focused on whether the trial court's decision to finish the final pretrial conference and "offers to hear the Faretta invocation" in the near future was a violation of his rights. Dkt. No. 22-6 at 5-7. The question of whether the trial court erred in denying the petitioner's request *at trial* following a Faretta colloquy is not properly before this court.

When reviewing the petition, this court focused on whether the state court had reasonably identified and applied federal law governing the petitioner's right to represent himself. He argues that the state appellate court got it wrong because there was sufficient time at the final pretrial hearing for the trial court to conduct a Faretta inquiry and that the decision to continue the colloquy on another date was a constructive denial. But, as this court pointed out, the petitioner did not clearly and unequivocally make his request until the latter portion of the final pretrial conference. Instead, he said, "please get this guy off my case," dkt. no. 11-7 at 53, "I want you to withdraw" and "he's not representing me," id. at 66, and "I would like to have a lawyer listen to me," id. at 82. The trial court explained to the petitioner that his attorney would "vigorously, zealously" represent him and that the court had ruled in his attorney's favor on some of the motions before the court. Id. at 85. Only then did the petitioner say, "I want to represent myself, Your Honor, pro se." Id. at 85.

The petitioner focuses on the fact that the trial court did not halt the proceeding and immediately engage in a Faretta colloquy. The trial court explained that it did not have time to address the request at that point, that it would finish the final pretrial hearing and that it would set a hearing on the petitioner's request to proceed without an attorney for the following week. Dkt. No. 11-7 at 85. The court did not deny the petitioner's request at the final pretrial conference, and the petitioner has not cited controlling federal law in support of his argument that the court effectively denied the motion by continuing the inquiry until the next available date.

The petitioner relies on Imani, where the Seventh Circuit said in a footnote that a "denial is a denial, even with an offer to reconsider in certain circumstances." 826 F.3d at 945, n. 1. In Imani, the trial court denied the petitioner the right to represent himself because the court determined that the petitioner made the decision without a "sufficiently rational basis," driven by his frustration with his attorney at a suppression hearing. Id. The Seventh Circuit emphasized that nothing in Faretta requires a petitioner to persuade the judge that he has a good reason to proceed on his own. Id. That case was different because the trial court denied the petitioner's request without engaging in the Faretta inquiry.

The petitioner cites other federal cases, but those cases also involved situations where the trial court did not engage in a Faretta inquiry. In Raulerson, 469 U.S. at 966, Justice Marshall wrote a dissent to a *per curium* decision denying a petition for *certiorari* review. The petitioner in Raulerson had been convicted of murder and sentenced to death. Id. After his death sentence was stayed by a federal district court, the petitioner expressed dissatisfaction with his attorney. Id. at 967. Three weeks before the second sentencing, the

petitioner asked if he could proceed as co-counsel with his attorney. Id. Three days after he made that request, the petitioner wrote a letter and asked to proceed *pro se*. Id. Rather than engaging with the request, the court provided a copy of the letter to counsel and did nothing more. Id. The court did not let the petitioner proceed as co-counsel and his attorney did not make a closing argument at the sentencing hearing. So the petitioner faced the death penalty with no further argument on his behalf. Id. Justice Marshall wrote that if a request to proceed *pro se* is clear, the Faretta hearing must follow a request in order to assure that the defendant is not required to proceed with the unwanted assistance of counsel. Id. at 971. Aside from the fact that statements made in a dissent are not controlling, the trial court in Raulerson never held a Faretta hearing. Id. at 968.

Likewise, in Mancillas, 880 F.3d at 301, the district court understood that the defendant was requesting to proceed *pro se* at his sentencing but simply said, "I am not going to do that" before moving on with the sentencing. The Seventh Circuit pointed out that the district court never addressed the request for self-representation, never conducted the requisite inquiry and only reminded the defendant that he was on his third attorney. Id. at 302.

The bottom line is that the petitioner has not established a manifest error of law or fact (or a mistake or any other basis justifying relief) with respect to this court's conclusion that the state court reasonably applied federal law. The petitioner argues that State v. Klessig, which was cited by the Wisconsin Court of Appeals, is a competency standard. Klessig, 211 Wis. 2d at 203, addressed a defendant's right to represent himself; in Klessig the Wisconsin Supreme Court cited to Faretta.

The petitioner also attacks this court's ruling on his ineffective assistance of counsel claim. The court pointed out that the Wisconsin Court of Appeals had cited an independent and adequate state law ground for affirming the denial of the petitioner's postconviction motion and also applied the Strickland standard[1] when analyzing the petitioner's claims and finding that there was no "reasonable probability that [he] was prejudiced by counsel's alleged error." Dkt. No. 32 at 32 (citing State v. As-Saffat, Appeal No. 2017AP2084-CR, 2020 WL 1160975, at *3 (Wis. Ct. App. Mar. 11, 2020)). The court addressed the petitioner's arguments about Chadwick's report and pointed out Dobrowski had acknowledged that Chadwick's testing was inconclusive. Id. at 35-39. As the court explained, the petitioner never presented an affidavit from Chadwick or suggested that Chadwick's testimony would have contradicted his report. Id. at 39.

In finding that the Wisconsin Court of Appeals properly applied Strickland, the court focused on the petitioner's inability to establish prejudice on this record:

> Even without Dobrowski's report and testimony, the victim, who was in seventh grade, testified in detail about what happened to her and positively identified the petitioner in the courtroom. The sexual assault nurse examiner from Aurora Sinai Medical Center testified that the victim had multiple tears in the vaginal area—including a two-centimeter, fresh tear with active bleeding—and swelling indicative of blunt force trauma to the area and consistent with sexual assault. The nurse examiner testified that to a reasonable degree of medical certainty, her findings were consistent with the victim's reports to her.
>
> In addition, the jury saw video evidence of the petitioner and the victim at the hotel and the victim identified the man in the video as the petitioner and the one who raped her. The petitioner testified that he fled the police. Sergeant Rick Burmeister, a member of the Fugitive Apprehension Unit, testified that the petitioner locked

[1] Strickland v. Washington, 466 U.S. 668, 687 (1984).

> himself in a basement furnace room and resisted arrest. The petitioner testified that he had been convicted eight times, that he had just left the House of Corrections and that he took the victim to the motel room where he was living because he was a "protector" and she needed help. When asked about the DNA evidence, the petitioner testified that he had left a condom in his garbage but that when he returned to the motel the victim was sitting on the bed in front of the condom. He testified that he took the condom and put it "in the garbage again," the implication being that the victim removed it from the garbage to smear it in her underwear to frame him. He further testified that he never told the police his suspicion about the used condom until the police started mentioning the DNA. Finally, the petitioner told the jury that this was his fourth trial in nine months; at that point, the court interjected and clarified that it was "the first and only trial in this case."
>
> On this record, the petitioner has not shown a reasonable probability that Chadwick's testimony or the testimony of any other DNA expert would have changed the result of the trial.

Id. at 39-40 (internal citations omitted).

The court acknowledged that the petitioner had maintained his innocence in an attempt to overcome procedural default. Id. at 25-26. And some of the arguments he makes about the victim's credibility in his motion for reconsideration are new, but attacking the victim's testimony regarding the amount of time it took to travel from Arkansas or the cost of her bus ticket is not the type of "new, reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." See Jones v. Calloway, 842 F.3d 454, 461 (7th Cir. 2016) (citing McQuiggin v. Perkins, 569 U.S. 383, 392 (2013)). Finding no manifest error of law or fact, no newly discovered evidence and no other basis for reconsideration, the court will deny the petitioner's motion.

## II. Conclusion

The court **DENIES** the petitioner's motion for reconsideration. Dkt. No. 36.

Dated in Milwaukee, Wisconsin this 20th day of October, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**